Docket No. 80868–Agenda 10–March 1997.

CULT AWARENESS NETWORK, Appellant, v. CHURCH OF SCIENTOLOGY INTERNATIONAL 
et al.
, Appellees.

Opinion filed September 18, 1997.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Cult Awareness Network, filed suit in the circuit court of Cook County against defendants, Church of Scientology International and Church of Scientology of Illinois (collectively, the Church of Scientology), as well as the law firm of Bowles & Moxon. In the complaint, as amended, plaintiff alleged that defendants had engaged in a conspiracy to maliciously prosecute numerous civil actions against plaintiff. The circuit court dismissed the suit for failure to state a cause of action. The court ruled that (i) plaintiff had failed to allege a favorable termination of the underlying actions and (ii) plaintiff had not satisfied the special damage requirement for actions sounding in malicious prosecution. The appellate court affirmed the order of dismissal (279 Ill. App. 3d 66), and we allowed plaintiff's petition for leave to appeal (155 Ill. 2d R. 315(a)). For the reasons that follow, we reverse the judgments of the appellate and circuit courts and remand the matter to the circuit court for further proceedings.

BACKGROUND

Because the circuit court dismissed this action pursuant to section 2–615 of the Code of Civil Procedure, we must take the factually sufficient allegations contained in plaintiff's complaint as true. See 
Doe v. Calumet City
, 161 Ill. 2d 374, 381 (1994). Those allegations may be summarized in the following manner.

Plaintiff is a not-for profit corporation engaged in, among other things, educating the public with respect to religious rights, freedoms, and responsibilities. Defendants are two religious corporations and their attorneys. Plaintiff claimed that defendants conspired with each other to carry on a campaign of malicious prosecution for the express purpose of causing plaintiff's bankruptcy and eventual disbandment. Specifically, plaintiff alleged that, between January 24, 1992, and July 1, 1993, various members of the Church of Scientology filed 21 lawsuits which named plaintiff as the defendant.
(footnote: 1) Plaintiff further alleged that the lawsuits were filed in several jurisdictions around the country, including Illinois, California, Massachusetts, Minnesota, New York, and Washington, D.C. All but one of the suits alleged that plaintiff had violated various state and federal civil rights laws by denying each complainant membership in plaintiff's organization and/or access to its meetings. The lone cause of action that did not contain such allegations was filed by a church member who claimed that plaintiff had fraudulently induced him to do volunteer work. Each of the underlying suits was alleged to have terminated in plaintiff's favor, either by summary judgment or by voluntary and involuntary dismissals.

After setting forth the details of the underlying suits, plaintiff further alleged that the filing of each of the lawsuits constituted a “separate overt act” in furtherance of the alleged conspiracy. In particular, plaintiff claimed that the Church of Scientology “suggested, instigated, encouraged, and assisted the named plaintiffs in the [underlying] lawsuits and complaints.” Plaintiff also alleged that Bowles & Moxon provided assistance and support to the Church of Scientology in each of the underlying lawsuits. According to plaintiff, each of those actions was filed without probable cause. Finally, plaintiff claimed that it had suffered damages as a result of the “multiplicity of actions brought by, at the behest of, or with the assistance of defendants.” For example, plaintiff alleged that it had incurred substantial attorney fees and increased costs for liability insurance, among other things.

Defendants thereafter filed a motion to dismiss the complaint with prejudice for failure to state a cause of action. In support of their motion, defendants argued that none of the underlying suits had ended in a judicial termination that dealt with the factual issues of the case, and thus plaintiff had failed to allege that the actions had terminated in its favor as required under Illinois law. Moreover, defendants claimed that plaintiff had failed to satisfy Illinois' special injury requirement. In their view, the damages alleged by plaintiff constituted nothing more than the usual costs and anxiety associated with defending against an ordinary civil action. The circuit court agreed with both points and granted the motion to dismiss.

As previously noted, the appellate court affirmed the judgment of the circuit court. Although the court acknowledged that plaintiff had alleged that each of the underlying suits was terminated in its favor, either by summary judgment or by dismissal (both voluntary and involuntary), the court nevertheless held that such allegations were insufficient to satisfy the favorable termination requirement as that term had been defined in previous appellate court opinions. The court noted that, under Illinois law, “ `[a] favorable termination for purposes of a malicious prosecution claim is one which deals with the 
factual
 issue or issues of a case.' (Emphasis added.)” 279 Ill. App. 3d at 70, quoting 
Bismarck Hotel Co. v. Sutherland
, 175 Ill. App. 3d 739, 748 (1988). Plaintiff's allegations, however, failed to indicate that the factual issues in the underlying actions had been adjudicated in plaintiff's favor. 279 Ill. App. 3d at 70. In addition, the appellate court held that plaintiff's allegations for damages did not satisfy the special injury requirement. Rather, the allegations merely constituted “the ordinary harm generated from any legal actions.” 279 Ill. App. 3d at 72. Finally, the court rejected plaintiff's contention that the special damage requirement was satisfied by the multiple number of underlying suits at issue in this case. 279 Ill. App. 3d at 70.

ANALYSIS

The dispositive issue for our review is whether plaintiff has alleged sufficient facts to support a cause of action for civil conspiracy. However, because such an action necessarily depends upon the commission of some underlying tort (see 
Adcock v. Brakegate, Ltd.
, 164 Ill. 2d 54, 63 (1994); 
Bonney v. King
, 201 Ill. 47, 50 (1903)), the viability of plaintiff's complaint in this case turns upon whether plaintiff has alleged enough facts to satisfy the elements of malicious prosecution. Therefore, it is appropriate that we examine those elements in determining the adequacy of plaintiff's charge.

In Illinois, the elements of malicious prosecution are well established. The plaintiff must show that the defendant brought the underlying suit maliciously and without probable cause. Moreover, the plaintiff must establish that the former action was terminated in his or her favor. Finally, the plaintiff must plead and prove some “special injury” or special damage beyond the usual expense, time or annoyance in defending a lawsuit. 
Bank of Lyons v. Schultz
, 78 Ill. 2d 235, 239 (1980); 
Schwartz v. Schwartz
, 366 Ill. 247, 250-53 (1937). In the present case, the parties dispute whether plaintiff has satisfactorily pleaded (i) the requisite favorable termination of the underlying suits and (ii) a special injury. We address each in turn.

Favorable Termination

The necessity of alleging a favorable termination in actions for malicious prosection is a long-standing and deeply rooted principle in this court's jurisprudence. Indeed, as early as 1832, this court concluded that the former proceeding must have been legally determined in favor of the malicious prosecution plaintiff before the malicious prosecution action will lie. 
Feazle v. Simpson
, 2 Ill. 30 (1832). Although this court has, over the years, consistently acknowledged the requirement (see 
Bank of Lyons
, 78 Ill. 2d at 239; 
Schwartz, 
366 Ill. at 250; 
Shedd v. Patterson
, 302 Ill. 355, 359 (1922); 
Bonney
, 201 Ill. at 50; 
Smith v. Michigan Buggy Co.
, 175 Ill. 619, 629 (1898)), it has not had the occasion to identify, with any precision, the types of judicial determinations which constitute a “favorable termination” for purposes of malicious prosecution suits. As a result, the contours of the requirement have been shaped by our appellate court, which in 1970, announced that the favorable termination requirement could be satisfied only by “a judgment which deals with the 
factual
 issue of the case, whether the judgment be rendered after a trial or upon motion for summary judgment.” (Emphasis added.) 
Siegel v. City of Chicago
, 127 Ill. App. 2d 84, 108 (1970). Since that time, this holding has been relied upon without any detailed analysis, by numerous appellate court decisions, including that which we review today. See, 
e.g.
, 
Kurek v. Kavanagh, Scully, Sudow, White & Frederick
, 50 Ill. App. 3d 1033, 1038 (1977); 
Executive Commercial Services, Ltd. v. Daskalakis
, 74 Ill. App. 3d 760, 767 (1979); 
Savage v. Seed
, 81 Ill. App. 3d 744, 749 (1980); 
Smith v. Aaron, Aaron, Schimberg & Hess
, 112 Ill. App. 3d 653, 657 (1983); 
Sutton v. Hofeld
, 118 Ill. App. 3d 65, 68 (1983); 
Arora v. Chui
, 279 Ill. App. 3d 321, 329 (1996). Therefore, the propriety of the appellate court's action in this case is largely dependent upon the correctness of 
Siegel
 and it progeny.

In 
Siegel
, the owners of certain property filed a multicount complaint for declaratory relief against the City of Chicago. In the complaint, plaintiffs sought to nullify a zoning amendment that would have permitted another defendant, Stein, to erect a high-rise apartment building near plaintiffs' properties. Stein filed a counterclaim, alleging that one of the counts in plaintiffs' complaint was filed without probable cause and with malice, thereby constituting malicious prosecution. The circuit court, however, had previously dismissed the count which had given rise to Stein's counterclaim, and, as result, dismissed Stein's counterclaim as well. The court ruled that the dismissal of plaintiffs' count could not be viewed as a favorable termination for purposes of Stein's malicious prosecution action. Stein appealed the ruling.

The appellate court affirmed the judgment of the circuit court, holding that a dismissal of the former action could not qualify as a favorable termination in the context of a malicious prosecution suit. The court predicated its holding on the fact that the favorable termination requirement “goes to the question of probable cause.” 
Siegel
, 127 Ill. App. 2d at 107. As a result, the court reasoned that

“the legal termination requirement necessitate[d] a judgment which deals with the
 factual issue of the case
, whether the judgment be rendered after a trial or upon motion for summary judgment. However, it is not sufficient to simply obtain a dismissal of the opponents' complaint, for such dismissal need bear no logical relationship to the legitimacy of the assertions contained therein; therefore, such dismissal lends no credence to the claim that the assertions were baseless.” (Emphasis added.) 
Siegel
, 127 Ill. App. 2d at 108.

Consonant with this conclusion, the appellate court affirmed the dismissal of Stein's counterclaim.

As noted above, the 
Siegel
 analysis has, throughout the years, been relied upon by different panels of our appellate court, including the one which affirmed the circuit court's judgment in this case. We note that several of these later appellate court opinions state that voluntary dismissals do not satisfy the favorable termination requirement and cite this court's decision in 
Bonney
 as authority for that proposition. See 
Kurek
, 50 Ill. App. 3d at 1038; 
Withall v. Capitol Federal Savings of America
, 164 Ill. App. 3d 851, 856 (1987). The 
Siegel
 court, however, did not rely on any of this court's opinions in formulating its analysis with respect to the favorable termination requirement. Moreover, a close reading of the 
Bonney
 decision reveals that the malicious prosecution plaintiff failed to allege that the underlying action claimed to have been wrongfully brought was ever “legally terminated.” 
Bonney
, 201 Ill. at 50. We stress that this court, in 
Bonney
, never intimated, in any way, that voluntary dismissals did not satisfy the favorable termination requirement, and those appellate court decisions which so hold are simply incorrect as to this point. 

Notwithstanding the above, defendants regard the appellate court's interpretation of the favorable termination requirement as a reasonable means of limiting a cause of action which has long been disfavored at law. They maintain that the 
Siegel
 holding finds support in this court's previous opinions which have recognized that actions for malicious prosecution inhibit the free access of the courts. In their view, a more expansive interpretation of the favorable termination requirement would lead litigants to fear subsequent prosecution simply for “calling upon the courts to determine [their] rights.” Plaintiff, on the other hand, asks this court to overrule this line of cases, claiming that the appellate court has been overly restrictive in its interpretation of the favorable termination requirement. In support of its position, plaintiff points out that the holding in 
Siegel
 and its progeny conflicts with the views of many courts in other jurisdictions and the views of most modern commentators. As a result, although the tort of malicious prosecution is recognized in Illinois, plaintiffs believe that the holding in 
Siegel
 has led to the virtual eradication of the cause of action in this state. Although we are not unmindful of the concerns raised by defendants, we agree with plaintiff that our appellate court's interpretation of the favorable termination requirement is at odds with modern tort law.

We begin our review of this issue with a discussion of the Restatement (Second) of Torts, which suggests looking beyond the type of disposition that was obtained in the previous action when determining if that termination is, indeed, “favorable” for purposes of a malicious prosecution action. Specifically, the Restatement provides as follows:

“
Termination in favor of the person against whom civil proceedings are brought.
 Civil proceedings may be terminated in favor of the person against whom they are brought *** by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. ***

Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, 
depends upon the circumstances under which the proceedings are withdrawn.
” (Emphasis added.) Restatement (Second) of Torts §674, Comment 
j
 (1977).

Unlike the holding in 
Siegel
, the Restatement approach, which has been expressly adopted by various courts across the nation (see, 
e.g.
, 
Barrett Mobile Home Transport, Inc. v. McGugin
, 530 So. 2d 730, 735-36 (Ala. 1988); 
Frey v. Stoneman
, 150 Ariz. 106, 110-11, 722 P.2d 274, 278-79 (1986); 
Nelson v. Miller
, 233 Kan. 122, 125-26, 660 P.2d 1361, 1363-65 (1983); 
Christian v. Lapidus
, 833 S.W.2d 71, 74 (Tenn. 1992)), allows dispositions which do not reach the merits of the underlying case to satisfy the favorable termination requirement in certain circumstances. Under this approach, whether or not the requirement is met is to be determined not by the 
form
 or 
title
 given to the disposition of the prior proceeding, but by the 
circumstances
 under which that disposition is obtained. In addition to the above cases, we note that other courts, while not expressly referring to the Restatement by name, have followed its approach. See 
Abbott v. United Venture Capital, Inc.
, 718 F. Supp. 828, 833 (D. Nev. 1989) (compiling cases). Like those courts which have expressly adopted the Restatement, these courts also recognize that the existence of a favorable termination turns upon the
 circumstances
 under which the disposition is obtained. See 
Weaver v. Superior Court
, 95 Cal. App. 3d 166, 184-85, 156 Cal. Rptr. 745, 755-56 (1979); 
Wong v. Tabor
, 422 N.E.2d 1279, 1284-85 (Ind. App. 1981). As a result, terminations which do not rise to the level of adjudications on the merits may satisfy the favorable termination requirement. See, 
e.g.
, 52 Am. Jur. 2d 
Malicious Prosecution
 §42 (1970). For example, if the dismissal was merely a formal means of securing a negotiated settlement, it cannot serve as the basis for a malicious prosecution action. See 
Barrett Mobile Home Transport
, 530 So. 2d at 735-36. See also 
Wong v. Tabor
, 422 N.E.2d 1279, 1284-85 (Ind. App. 1981) (same). Likewise, a malicious prosecution claim cannot be premised on a dismissal that was entered in order to enable the plaintiff to file the claim in another forum. See 
Ramsey v. Leath
, 706 F.2d 1166, 1170-71 (11th Cir. 1983). Conversely, an involuntary dismissal resulting from plaintiff's failure to comply with discovery serves as a favorable termination due to the fact that a party who fails to produce evidence, in essence, fails to prosecute. See 
Lumpkin v. Friedman
, 131 Cal. App. 3d 450, 182 Cal. Rptr. 378 (1982); see also 
Nagy v. McBurney
, 120 R.I. 925, 392 A.2d 365 (1978) (holding that involuntary dismissal for failure to file court-ordered bill of particulars constitutes favorable termination).

We agree with the reasoning espoused by the courts of our sister states. We regard the Restatement's treatment of the favorable termination requirement as more balanced than our appellate court's interpretation as set forth in 
Siegel
. Nevertheless, defendants criticize the Restatement approach as being too sweeping in its scope. We disagree. Contrary to defendants' arguments, we do not necessarily view the Restatement's position, as expressed in the case law, as more expansive than our appellate court's interpretation. As the case law demonstrates, a favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause. See also 54 C.J.S. 
Malicious Prosecution
 §54 (1987) (dismissal cannot serve as favorable termination if based solely on technical or procedural grounds). This, of course, was one of the goals of the 
Siegel
 court. See 
Siegel
, 127 Ill. App. 2d at 107 (acknowledging that even if the malicious prosecution plaintiff has obtained a favorable termination in the underlying action, it “does not follow that [the underlying action had been] initiated without foundation”). Unlike 
Siegel
, however, the analysis set forth in the Restatement contemplates that certain dispositions, although not obtained on the merits of the underlying facts, may under certain circumstances give rise to an inference of a lack of probable cause. In contrast, the 
Siegel
 rule has the unfortunate consequence of allowing those who utilize our courts for wrongful purposes to do so with impunity so long as they obtain a nonfactual disposition of the action. Under this approach, a disingenuous plaintiff can merely nonsuit his or her frivolous lawsuit in order to guard against a future malicious prosecution action. See 
Arora
, 279 Ill. App. 3d at 336 (McLaren, J., dissenting); see also 
Marbourg v. Smith
, 11 Kan. 554, 562-63 (1873) (recognizing, as early as 1873, the problems inherent in allowing a plaintiff to avoid a malicious prosecution action by nonsuit). In our view, the Restatement's position best balances the right of citizens to have free access to our courts and the right of the individual to be free from being haled into court without reason, thereby better serving the interests of justice.

Defendants also maintain that the existence of our Rule 137 provides an additional reason for this court not to depart from the appellate court's interpretation of the favorable termination requirement. They submit that the rule provides an adequate remedy for suits not well grounded in law or in fact. We must summarily reject this argument. Although Rule 137 was adopted as a means of preventing false and frivolous filings, it was not meant to preempt our existing tort law. The courts of this state have recognized, both before and after the adoption of Rule 137, the viability of a cause of action sounding in malicious prosecution. 

In addition, our decision to follow the Restatement view on this issue is consistent with our recent opinion in 
Swick v. Liautaud
, 169 Ill. 2d 504, 513 (1996). In 
Swick
, we addressed whether a 
nolle prosequi
 was a favorable termination in the context of malicious prosecution of an underlying criminal action. This court, without dissent, adopted the Restatement's approach to the question and held that a 
nolle prosequi
 may serve as a favorable termination unless the prosecution was abandoned for reasons not indicative of the innocence of the accused. 
Swick
, 169 Ill. 2d at 513. Indeed, we stressed that it was the 
circumstances
 surrounding the entry of the 
nolle prosequi
 that must be examined and not the mere form or title of the disposition. 
Swick
, 169 Ill. 2d at 513-14. We today provide similar guidelines for malicious prosecution suits which are predicated upon prior 
civil
 proceedings.

Having adopted the Restatement approach, we find that plaintiff's complaint in this case, which alleges that each of the underlying actions were terminated in its favor either by the entry of summary judgment or by dismissal (voluntary and involuntary), satisfies the favorable termination requirement, at least for purposes of defendant's motion to dismiss under section 2–615. Whether or not these dispositions ultimately 
are proved by plaintiff
 to be indicative of a lack of probable cause remains a question of fact which cannot be answered at this stage of the litigation. See 
Swick
, 169 Ill. 2d at 514 (recognizing that at trial, plaintiff must adduce evidence to meet its burden of proof that the prior proceedings were terminated under circumstances indicative of plaintiff's innocence). See also 
Nelson
, 233 Kan. at 125-26, 660 P.2d at 1364; 
Abbott
, 718 F. Supp. at 834.

Accordingly, the circuit court erred in ruling that plaintiff had failed to sufficiently allege the favorable termination of the underlying actions at issue.

Special Damage or Injury

We must next determine whether plaintiff's complaint adequately pleaded special injury or damage. Like the favorable termination requirement, the necessity of pleading some special injury or damage is firmly rooted in our jurisprudence. In one of the earliest references to the requirement, this court, in 1898, examined whether damages can be recovered for the malicious prosecution of an “ordinary civil suit, begun by personal service of process, and unaccompanied either by an arrest of the person or by seizure of property.” 
Smith v. Michigan Buggy Co.
, 175 Ill. 619, 624 (1898). The underlying suit in question in 
Smith
 was an unsuccessful action for fraudulent misrepresentation brought by an employer against one its salesman. Citing both American and English common law principles, this court determined that without the arrest of the person or the seizure of the person's property or some “other special injury,” a cause of action for the malicious prosecution would not lie in civil actions. 
Smith
, 175 Ill. at 627. In reaching this conclusion, the court stressed its decision was grounded upon the fact that the courts are open to every citizen to claim what “he deems to be his right without fear of being prosecuted for heavy damages.” 
Smith
, 175 Ill. at 628. Thus, the ordinary trouble and expense which arise from “
ordinary forms of legal controversy
, should be endured by the law-abiding citizen as one of the inevitable burdens, which men must sustain under civil government.” (Emphasis added.) 
Smith
, 175 Ill. at 629.

The issue of what type of lawsuit constitutes an “ordinary form of legal controversy” was again addressed by this court some 22 years later in 
Norin v. Scheldt Manufacturing Co.
, 297 Ill. 521 (1921). There, the Scheldt Manufacturing Company filed a petition in bankruptcy against Norin, requesting that Norin be adjudged a bankrupt. Scheldt filed the petition on publication alone. When Norin failed to appear in the proceeding, the court entered a bankruptcy judgment against him. Norin later learned of the bankruptcy action and began 
vacatur
 proceedings. During the hearing to set aside the default, one of Scheldt's officers admitted he had known Norin's place of residence at the time service by publication was obtained. Moreover, Scheldt admitted that it had been unable to prove Norin's insolvency at the time it filed its petition. Accordingly, the court vacated its previous judgment and dismissed the bankruptcy petition. Norin thereafter brought suit against Scheldt to recover damages for the malicious prosecution of the bankruptcy action. Scheldt contended that Norin had failed to satisfy the special injury requirement because (i) the bankruptcy judgment had ultimately been vacated, and (ii) Norin's property had not been seized. Scheldt concluded therefore that the bankruptcy litigation constituted a mere “ordinary” civil action. On appeal, this court rejected that argument. In doing so, we concluded that the bankruptcy action could not be considered ordinary because of the “far-reaching and drastic” effects associated with that proceeding. 
Norin
, 297 Ill. at 525. In fact, because of the peculiar, 
sui generis
 nature of a bankruptcy action, this court deemed irrelevant the fact that Norin's property was not seized. We explained that suits “which are themselves unusual in their effect upon the defendant” fall outside the special injury requirement established in 
Smith
. 
Norin
, 297 Ill. at 527.

Subsequently, in 
Shedd v. Patterson
, 302 Ill. 355 (1922), this court had further opportunity to shape the contours of the special injury requirement. In that case, the plaintiff brought a malicious prosecution action against defendant after the defendant had filed nine successive lawsuits against plaintiff, all of which related to the foreclosure of a leasehold estate for unpaid rents. The circuit court dismissed the action, and the appellate court affirmed. The appellate court ruled that under this court's decisions in 
Smith
 and 
Norin
, the nine unsuccessful prior actions constituted “ordinary” litigation; therefore, plaintiff had not suffered any special injury. This court thereafter granted plaintiff leave to appeal and reversed the judgment of the appellate court. Although this court initially acknowledged that the Illinois courts are open to all litigants for the settlement of their rights without fear of retributive litigation, it nevertheless held that 
Smith
 and 
Norin
 could not be viewed as providing immunity in the case of successive suits after a party has had his or her rights finally adjudicated. 
Shedd
, 302 Ill. at 360. Specifically the court stated that after a party has “had his day in court and his right has been conclusively determined,” he may not return to court to “harass” the same opponent about the same issues. 
Shedd
, 302 Ill. at 360.

It is against this precedential backdrop, and, in particular, 
Shedd
, that we must examine whether the special injury rule has been satisfied by the facts as alleged in this case. Defendants maintain that although multiple suits are involved here, the instant case is distinguishable from 
Shedd
 because each of the prior actions here were brought by different plaintiffs in different jurisdictions, concerning different sets of operative facts. Defendants also point out that each of the prior actions in 
Shedd
, unlike those here, were filed successively after the first action had been finally and conclusively determined. Plaintiff, on the other hand, acknowledges the dissimilarities between the cases, but nevertheless submits that the principles concerning multiple suits announced in 
Shedd
 apply with equal force to the case at bar. Plaintiff contends that the filing of 21 meritless lawsuits against plaintiff during a 17-month period constitutes a special injury regardless of the fact that the suits were filed concurrently rather than consecutively. Plaintiff submits, therefore, that it should be allowed a remedy for this harm.

We agree with defendants that 
Shedd
 is factually distinguishable from the case at bar. In 
Shedd
, this court was confronted with a single litigant who, having invoked the power of the judiciary to decide his grievance and having lost, refused to accept the judgment of the court and continued to litigate the matter. This court would not permit the court system to be used in such a manner, and thus it stated in pertinent part:

“Law is the foundation of civil government, and its administration and the means for its enforcement are essential to the maintenance of rights and the stability of the social order. To that end courts are created and maintained at the public expense, and are, and should be, open for the redress of grievances and the enforcement of rights, but that affords no reason for requiring them to employ their time to the prejudice of other litigants and the public business, to enable a party whose rights have been finally and conclusively determined to harass the same party about the same thing. *** In this case the courts had repeatedly decided that the defendant had no grievance, and the substantial questions involved were finally and conclusively settled [15 years earlier] in 
Patterson v. Northern Trust Co.
 231 Ill. 22.” 
Shedd
, 302 Ill. at 360-61.

Clearly, what concerned this court in 
Shedd
, to a large extent, was the fact that a litigant who had already been given his day in court, and had lost, continued to use the same purported grievance as a subterfuge for conducting a personal crusade of harassment under the guise of rightful litigation. In this case, however, the same plaintiff is not involved in repeated litigation and the multiple suits in question were not filed successively but concurrently. Therefore, 
Shedd
 is factually inapposite to the case at bar.

Nevertheless, the fact that 
Shedd
 is not factually on all fours with the present case does not spell victory for defendants. A common theme with respect to the special injury rule which runs throughout all of this court's opinions on the subject, including 
Shedd
, is this court's recognition of its responsibility to maintain a proper balance between the societal interest in preventing harassing suits and in permitting the honest assertion of rights in our court rooms. See 
Shedd
, 302 Ill. at 360. As our case law amply demonstrates, it is this balance which lies at the heart of the special injury rule (see 
Smith
, 175 Ill. at 628-29; 
Norin
, 297 Ill. at 526-27; see also 
Friedman v. Dozorc
, 412 Mich. 1, 67, 312 N.W.2d 585, 612 (1981) (Coleman, C.J., dissenting in part and concurring in part); Note, 
Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis
, 88 Yale L.J. 1218, 1230 (1979)), and it is this balance, and not the facts in 
Shedd
, which ultimately must determine the propriety of the instant action. Ironically, it is one of the critical differences between the facts in 
Shedd
 and the facts as alleged in this case which compels the conclusion that this delicate balance has been upset in this case. In contrast to 
Shedd
, which involved only two litigants disputing the foreclosure of a leasehold estate, the present case involves allegations that a large national corporation improperly induced its members to engage in a national campaign of simultaneous malicious prosecution. Plaintiff has alleged that the Church of Scientology instituted the simultaneous suits, not to resolve any legal dispute between the parties, but to keep plaintiff from engaging in its business of disseminating information regarding religious freedom. The invidiousness of the alleged conspiracy is best reflected in the fact that plaintiff was sued 21 times over the course of a 17-month period in jurisdictions ranging from New York to California. Such a sustained onslaught of litigation can hardly be deemed “ordinary” if plaintiff can prove that the actions were brought without probable cause and with malice. In view of these circumstances, we believe that plaintiff has set forth facts, which if proved true, satisfy our special injury rule.

Notwithstanding the above, defendants submit that if this court were to conclude that the special injury requirement has been met in this case, we would be infringing upon defendants' exercise of their first amendment rights. Specifically, defendants rely upon several United States Supreme Court decisions which have held that the litigation activities of a national membership organization, including encouraging, financing, and coordinating a series of lawsuits challenging discriminatory practices, are protected by the first amendment. See 
National Ass'n for the Advancement of Colored People v. Button
, 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963); 
United Mine Workers of America, District 12 v. Illinois State Bar Ass'n
, 389 U.S. 217, 19 L. Ed. 2d 426, 88 S. Ct. 353 (1967). While we do not dispute the correctness of these Supreme Court decisions, we do dispute the defendants' reliance upon them. The Constitution affords protection to the
 honest
 litigator in search of resolutions to 
true
 legal disputes; however, it does not provide the right to any individual to assist another, with money or otherwise, in the prosecution of a suit which has been filed with malice and without probable cause. In any event, we stress that defendants have challenged plaintiff's complaint by way of a section 2–615 motion to dismiss. Such a motion merely addresses the allegations contained within the four corners of plaintiff's complaint. Therefore, defendants' constitutional argument, which is a fact-dependent defense to the action grounded in probable cause, cannot be considered in the context of the present motion to dismiss. Nothing in our opinion prevents defendants from raising the first amendment's protections at the appropriate juncture in this case.

As a final matter, we wish to stress that our holding with respect to the special injury requirement should not be viewed as a rejection of the rule as set forth in our earlier opinions. We further emphasize that today's decision should not be read to mitigate the strict requirement that a malicious prosecution plaintiff show not only that the action complained of has been terminated, but that it was commenced maliciously and without probable cause. These latter two required elements are no easy hurdle for a plaintiff, as many courts and commentators have noted. See 
Barrett
, 530 So. 2d at 735-36; 
Friedman
, 412 Mich. at 65-66, 312 N.W.2d at 611 (Coleman, C.J., dissenting in part and concurring in part); 
Kaufman v. Shefman
, 169 Mich. App. 829, 840, 426 N.W.2d 819, 824 (1988); Restatement (Second) of Torts §675, Comments 
a
 through 
d
 (1976). An action for malicious prosecution remains one that is disfavored in law.

CONCLUSION 

In view of the foregoing analysis, we hold that plaintiff has sufficiently alleged the elements of the tort of malicious prosecution and, for purposes of this case, the tort of civil conspiracy to commit malicious prosecution. The circuit court, therefore, erred in dismissing the amended complaint. Accordingly, we reverse the judgments of the appellate and circuit courts, and remand the matter to the circuit court for further proceedings consistent with this opinion.

Judgments reversed;

cause remanded.

JUSTICE McMORROW took no part in the consideration or decision of this case.

FOOTNOTES
1:
We note that plaintiff has stated in its brief that 24 separate suits were filed during this period. Moreover, the appellate court opinion also referred to plaintiff's allegations regarding 24 different actions. 279 Ill. App. 3d at 70. Nevertheless, our review of plaintiff's complaint reveals that in one of the actions, identified in the complaint as the “Ward et al. Lawsuits,” four different church members were named as joint plaintiffs in a single suit. Therefore, only 21 lawsuits were actually referenced in plaintiff's complaint.