In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3398

ROBIN D. WEST,

*Plaintiff-Appellant,*

*v.*

DEAN L. WEST,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:10-cv-03211-RM-BGC—**Richard Mills**, *Judge.*

SUBMITTED JULY 26, 2012—DECIDED SEPTEMBER 17, 2012

Before POSNER, MANION, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a diversity suit for battery and related torts under Illinois law, brought by a woman who claims that her ex-husband beat and raped her on March 17, 2008, while they were still married. The district judge dismissed the suit on his own initiative, ruling that it was malicious. The plaintiff is proceeding in forma pauperis, and 28 U.S.C. § 1915(e)(2)(B)(i) requires a district court to dismiss such a suit "at any

time if the court determines that . . . [it] is frivolous or malicious."

She complained about the beating and rape to the police, but later withdrew charges, resumed living with the defendant, and emailed him, for his approval, a statement recanting the charges—saying she had fabricated them and that he was a wonderful husband. Later still, however, the couple separated and divorced, and this suit ensued.

In ruling the suit malicious, the judge (writing in September 2011, some 18 months after the suit had been filed) said that his court "has become the latest battleground for the parties in their long-running personal feud. The Plaintiff has submitted hours of recorded telephone conversations documenting the ebb, flows and explosions of her relationship with the Defendant. Most of the filings to date do not relate directly to alleged tortious actions of March 17, 2008." He added: "this action may be merely a fishing expedition. The Plaintiff has expressed her desire to subpoena the Defendant's telephone records, and has requested that the Court enter an order blocking AT&T from disposing of any telephone records relating to the Defendant. It is unclear how these records would relate to the instant action . . . . The defendant claims that the Plaintiff is seeking these records so she can contact his friends and associates to disparage his reputation . . . . The Plaintiff has generally confirmed this in her latest filing, stating that she tried to contact an individual to warn her regarding the Defendant's character . . . . The Court refuses to be pulled into this vitriolic tug-of-war."

The accusation of a "fishing expedition" is not substantiated by the record. The plaintiff has requested only the records of phone calls made by the defendant to her; presumably she seeks these to prove that he harassed her. She does admit to having once called a woman to warn her against the defendant, but there is nothing to indicate that she seeks his phone records in order to warn other women.

Nor can a suit be dismissed on the ground that it is a "vitriolic tug-of-war." That unfortunately is an apt description of many suits, especially those that arise out of a marriage, or other relationship, gone bad. See, e.g., *Khan v. Fatima*, 680 F.3d 781 (7th Cir. 2012). It is an apt description of this suit. The record contains a remarkable collection of mutual accusations. The defendant accuses the plaintiff of being mentally ill and a compulsive liar; the plaintiff accuses the defendant not only of rape and assault but also of other acts of violence (against other women as well as against herself—accusations that if supported by evidence would be admissible in this case under Fed. R. Evid. 415), and of threats, lies, frequent run-ins with the police, and bigamy. There may well be merit to both sets of accusations, but the plaintiff's are better grounded in the record, being based on testimony by her under oath and by police records and other official documents. The defendant's accusations are based primarily on long and detailed but unsworn statements by him, with little corroboration except that the plaintiff admits that she has psychiatric problems—which she blames on the defendant.

Besides what the judge considered the suit's factual indeterminacy, he remarked that "the Defendant has repeatedly stated throughout his filings that he, too, is a pauper. The Plaintiff has not contested this issue, and her filings confirm that Defendant is indigent"—the judge was referring here to the plaintiff's having stated that the defendant had been represented by court-appointed counsel in a recent criminal case. The judge said that "if the Plaintiff were to prevail, it would be a hollow victory, because every indication is that the Defendant is judgment proof. The Court is unwilling to expend scarce judicial resources in such a pursuit." The "every indication" is based on unsworn assertions by the defendant; the only indication that he may be indigent is his having been represented by court-appointed counsel.

The evidence that the suit is "malicious" is thus far weak, but we need to be sure that we understand what the word means in section 1915. It is natural to connect it to the tort of malicious prosecution—the filing of a groundless suit for purposes of harassment. See, e.g., *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997); *Hammond Lead Products, Inc. v. American Cyanamid Co.*, 570 F.2d 668, 673 (7th Cir. 1977). Section 1915 as we know separately directs dismissal of "frivolous" suits by indigents, but a suit can be groundless without being so utterly groundless as to be deemed "frivolous." See *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Edwards v. Snyder*, 478 F.3d 827, 829-30 (7th Cir. 2007).

This suit is not groundless, let alone frivolous. The plaintiff's recantation is an admission and is therefore

admissible against her, but it is not conclusive, see *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011); *United States v. Parker*, 508 F.3d 434, 437-38 (7th Cir. 2007), given police photos that corroborate her testimony that her husband beat her on March 17, 2008, and the fact that recantations by abused spouses often turn out to be untruthful because of the victim's fear of retaliation, financial dependence, or hope of saving the marriage. See, e.g., *United States v. Young*, 316 F.3d 649, 655, 658 (7th Cir. 2002); Tom Lininger, "Prosecuting Batterers After *Crawford*," 91 *Va. L. Rev.* 747, 768-71 (2005), and references cited there; U.S. Department of Justice et al., "The Validity and Use of Evidence Concerning Battering and Its Effects in Criminal Trials: Report Responding to Section 40507 of the Violence Against Women Act" 20-21 (May 1996), www.ncjrs.gov/pdffiles/batter.pdf (visited Sept. 12, 2012); cf. *United States v. Skoien*, 614 F.3d 638, 643 (7th Cir. 2010) (en banc).

But a suit can be wrongful even if it is not groundless, if the aim is something other than a judgment, such as bankrupting the defendant or destroying his reputation or distracting him from his other pursuits or simply immiserating him. Such a suit is an abuse of process. See, e.g., *Heck v. Humphrey,* 512 U.S. 477, 486 n. 5 (1994); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 626 F.3d 958, 963 (7th Cir. 2010); *National City Bank v. Shortridge,* 689 N.E.2d 1248, 1252 (Ind. 1997); Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 594, pp. 410-28 (2d ed. 2011). And since it is tortious conduct it is an apt basis for a court's exercise of its common law power to protect itself from litigants' abuses of the litigation process. Abuse of process might also be thought "mali-

cious" within the meaning of section 1915. Cf. *id.*, §§ 592, 594, pp. 407, 419.

But the fact that a plaintiff is angry at the defendant and may be exceeding proper bounds of discovery is not enough by itself to justify an inference either that the suit is groundless or that the plaintiff is aiming for something other than a damages award. *Restatement (Second) of Torts* § 682, comment b (1977). It's hardly unusual for a plaintiff, however well-grounded his or her suit is, to be furious at the defendant. If the present suit is a "fishing expedition," in the sense that the plaintiff is casting the net of discovery too wide, this may reflect a pro se's ignorance of proper legal procedure rather than an intention to harass. And anyway harassment is a common litigation tactic even in meritorious litigation.

A defendant's being judgment proof might be evidence of improper purpose by the plaintiff. But as yet there is no *evidence* that the defendant is judgment proof besides the plaintiff's statement that he is or was represented by court-appointed counsel in another case; and we are told nothing about that case, about the standard of indigency applied by the court (a state, not a federal, court) in it, or about the truthfulness of whatever representations the defendant made that persuaded the court to appoint counsel for him. There is not even a financial statement from the defendant. But we agree that a finding that he was judgment proof would be relevant to whether the suit is an abuse of process. Cf. *Clark v. Georgia Pardons & Paroles Bd.*, 915 F.2d 636, 640-41 (11th Cir. 1990). Relevant, but not determinative.

We need to be careful about the meaning and significance of the term "judgment proof." The fact that a defendant can't (and the plaintiff knows he can't) write a check for the maximum foreseeable amount of damages is not conclusive, since a judgment against the defendant, or part of it, may be collectible by garnishment of the defendant's wages or by an order that he sell illiquid assets. As far as we know, the defendant does have wages—as of last year, at least, he was employed by a substantial Tennessee firm called Enviro USA, www.envirousa.com (visited Sept. 12, 2012).

But attempts to collect money judgments against an individual are costly if he resists, as he is likely to do if the judgment creditor has scant resources for protracted collection proceedings. And there are limits to conjecture about collectibility. Must a federal court entertain a suit for $1 million against a conceded pauper, on the ground that the pauper might win the lottery? Or be discovered to be the rightful heir to the Kingdom of Ruritania?

A plaintiff who knows she can't expect to obtain any damages yet persists in her suit probably has other aims, which can be summed up in the phrase "to harass." The harassment might be psychologically understandable and well motivated; the plaintiff in this case may be trying to save other women from brutal treatment at the hands of her ex-husband, though she disclaims any such motive. But well-motivated or not, making the defendant a pariah is not a proper aim of a civil damages suit; harassment is harassment whatever the

motive. The requirement of a minimum amount in controversy in federal diversity suits, though aimed at keeping out of federal court small cases in the sense of ones in which the injury alleged by the plaintiff is small, is consistent with the exercise by district judges of their traditional power to dismiss abusive litigation even if not frivolous.

Nevertheless the judge in this case did not, on the basis of the record compiled so far, have grounds for dismissing the suit as frivolous, malicious, or an abuse of process. The judgment must therefore be vacated. Because of the judge's evident exasperation with the parties, we think it best that Circuit Rule 36 apply on remand.

REVERSED AND REMANDED,
WITH INSTRUCTIONS.