2022 IL App (1st) 210549-U

No. 1-21-0549

Order filed May 10, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| 55 EAST WASHINGTON DEVELOPMENT, LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 2020 CH 05706 |
| | ) | |
| ADAM DAVID LYND, | ) ) | The Honorable Neil H. Cohen, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court properly dismissed plaintiff's claim for malicious prosecution where plaintiff's allegations failed to establish special damages.

¶ 2     This interlocutory appeal arises from the circuit court's order dismissing with prejudice

the malicious prosecution claim brought by plaintiff 55 East Washington Street Development,

LLC (East Washington), against defendant Adam David Lynd. The circuit court found, among

other things, that East Washington failed to plead special damages. For the following reasons, we affirm the circuit court's judgment.

¶ 3                                    I. Background

¶ 4      Pursuant to a September 2015 agreement, Adam David Partners I, LLC (ADP), was to purchase from East Washington, for $55 million, certain floors (Fornelli Tower) of the historic Pittsfield building, located at 55 East Washington Street. ADP entered into the purchase agreement through Lynd.

¶ 5      The purchase agreement required ADP to deposit $800,000 in earnest money into an escrow account by September 16, 2015. In addition, ADP could terminate the agreement for any reason before October 9, 2015, and retain its earnest money. Alternatively, ADP was required to deposit a nonrefundable $2.7 million into the escrow account by that same date. Closing was to occur no later than November 9, 2015, but ADP could obtain a 30-day extension by making a nonrefundable $1 million payment, which would be applied toward the purchase price at closing.

¶ 6      ADP did not terminate the agreement or make a $2.7 million deposit by October 9, 2015. Instead, on October 8th, ADP's attorney told East Washington that it had misrepresented Fornelli Tower's rentable square footage, leading ADP to require additional time. ADP asked that the closing date be extended 120 days. East Washington refused, however, responding that ADP had to make the additional $2.7 million payment before East Washington would consider an extension.

¶ 7      On November 20, 2015, ADP, through counsel, filed a five-count complaint (2015 CH 17028) against East Washington seeking, among other things, reformation of contract and specific performance (count IV). ADP also caused a *lis pendens* to be recorded against Fornelli Tower. In response, East Washington moved to dismiss count IV, cancel the *lis pendens*, and

impose sanctions against ADP's counsel under Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 8     The circuit court dismissed count IV with prejudice, and apparently canceled the *lis pendens*. The court later granted East Washington summary judgment on ADP's remaining claims as well as East Washington's counterclaim for breach of contract.

¶ 9     On December 20, 2019, the circuit court entered a 38-page written order sanctioning ADP's attorneys for filing count IV. The court found that East Washington had not misrepresented the Fornelli Tower's square footage; rather, ADP essentially manufactured a discrepancy in square footage to obtain more time after facing several impediments to financing the purchase. Specifically, ADP's attorneys filed count IV to enable them to file a *lis pendens*, which would discourage other purchasers.

¶ 10    On September 3, 2020, East Washington filed the present complaint against Lynd in his personal capacity. East Washington alleged fraud (count I) as well as malicious prosecution based on Lynd's role in having ADP's attorneys file the 2015 equitable claim for reformation and specific performance as well as the *lis pendens* (count II). East Washington also sought to pierce the corporate veil (count III).

¶ 11    With respect to the malicious prosecution claim, East Washington alleged that Lynd directed ADP's attorneys to file the 2015 claims and *lis pendens* so that ADP could obtain more time and prevent East Washington from selling Fornelli Tower to a different buyer. In addition, Lynd, through ADP, agreed that the $3.5 million in escrow and $1 million extension fee would compensate East Washington for harm caused by having Fornelli Tower kept off the market should Lynd fail to cause ADP to close on the property for the full purchase price. Furthermore, Lynd's misconduct caused East Washington special damages, "including the harm *** of at least

$4.5 million caused by the improperly filed *lis pendens*, which prevented 55 East Washington's from being able to sell the property to a different buyer well past December 9, 2015."

¶ 12    Lynd filed a combined motion to dismiss all counts. As to malicious prosecution, Lynd argued, among other things, that ADP, rather than he, instituted a lawsuit against East Washington. Additionally, East Washington failed to allege that it sustained a special injury and its reliance on the *lis pendens* was insufficient. Lynd further argued that the malicious prosecution claim was barred by the statute of limitations.

¶ 13    In response, East Washington argued that the *lis pendens*, while not an injunction, had the same effect as one and was obtained to prevent East Washington from selling Fornelli Tower to another party while Lynd tried to raise money to finance the purchase. In addition, East Washington "suffered at least a $4.5 million special injury from the property's being wrongly removed from the market." According to East Washington, "Lynd acknowledged in the Purchase Agreement that this amount was a reasonable measure of the damages 55 East Washington would suffer from the property being off the market if Lynd did not timely close."

¶ 14    On April 22, 2021, the circuit court entered a written order dismissing the malicious prosecution claim with prejudice pursuant to section 2-615 for failure to state a claim and dismissing ADP's other counts without prejudice. The court found that Lynd himself had not commenced any judicial proceeding against ADP and the *lis pendens* did not constitute special damages. The court subsequently found, over Lynd's objection, that there was no just reason to delay the appeal of the dismissal with prejudice of East Washington's malicious prosecution claim.[1]

¶ 15                                  II.  Analysis

---

[1]On June 9, 2021, we denied Lynd's motion to dismiss this appeal for want of jurisdiction.

¶ 16    On appeal, ADP asserts that the circuit court erroneously found it failed to state a claim for malicious prosecution.

¶ 17    A section 2-615 motion attacks the legal sufficiency of the complaint. *Prakash v. Parulekar*, 2020 IL App (1st) 191819, ¶ 21. The critical inquiry is whether the complaint's allegations are sufficient to state a cause of action. *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470, ¶ 39. In making that determination, we take all well-pleaded facts, and reasonable inferences therefrom, as true, construing them in the light most favorable to the nonmovant. *Id.* ¶ 39; *Dvorkin v. Soderquist*, 2022 IL App (1st) 201368, ¶ 75. That being said, conclusory allegations are insufficient. *Mayle*, 2022 IL App (1st) 210470, ¶¶ 78-79. Specifically, because Illinois is a fact pleading state, a court cannot rely upon legal conclusions or conclusory factual allegations unsupported by specific facts. *Prakash*, 2020 IL App (1st) 191819, ¶ 21. We review the circuit court's judgment *de novo*. *Dvorkin*, 2022 IL App (1st) 201368, ¶ 75. Thus, we may affirm the court's judgment on any basis in the record. *Mayle*, 2022 IL App (1st) 210470, ¶ 39.

¶ 18    It is well settled that malicious prosecution actions are disfavored. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 24. Courts permit all citizens to claim what they believe to be their right without fear of prosecution for heavy damages. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 280-81 (1997). In addition, law-abiding citizens should endure the ordinary trouble and expense arising from ordinary forms of legal controversy as an inevitable burden of civil government. *Id.* at 281. Courts have a responsibility to maintain an appropriate balance between society's interest in preventing harassing lawsuits and permitting parties to bring honest assertions of their rights in court. *Id.* at 284.

¶ 19    To establish malicious prosecution, the plaintiff must show that the defendant filed the underlying lawsuit maliciously and without probable cause and that the former action was terminated in the plaintiff's favor. *Beaman*, 2019 IL 122654, ¶ 23. The plaintiff must also plead and prove, however, that it sustained some special injury or special damage beyond the usual time, expense and annoyance in defending a legal action. *Cult Awareness Network*, 177 Ill. 2d at 272. Special injury has usually been identified with arrest, seizure of property, some constructive taking or interference with property. *Levin v. King*, 271 Ill. App. 3d 728, 730-31 (1995). In most cases finding a special injury, the nature of the underlying action imposed "some quantifiable damage-causing characteristic" upon the malicious prosecution plaintiff. *Thomas v. Hileman*, 333 Ill. App. 3d 132, 138 (2002). In determining whether an injury was special, courts must focus on "the peculiar effect of the suit together with the remedy sought and not upon the subjective effect that the suit may have on the plaintiff." *Id.*

¶ 20    Here, East Washington asserts that the *lis pendens* filed at Lynd's direction in the underlying action constitutes special damages.

¶ 21    Pursuant to the *lis pendens* doctrine, an individual who obtains an interest in property while it is subject to a lawsuit is bound by the result of that litigation, as if the individual had been a party to the litigation from the outset. *LLC 1 05333303020 v. Gil*, 2020 IL App (1st) 191225, ¶ 20. The doctrine is intended to (1) avoid endless litigation of property rights triggered by the transfer of interests; (2) protect plaintiffs from third parties who might acquire an interest in the property during litigation; and (3) protect purchasers by providing notice that the land being purchased may be affected by a subsequent, binding judgment entered in a pending case. *Id*. At common law, the mere existence of a pending lawsuit was deemed to provide notice to the world, binding a subsequent purchaser to the lawsuit's determination, regardless of whether that

purchaser had actual or constructive notice. *First Midwest v. Pogge*, 293 Ill. App. 3d 359, 363 (1997). To ameliorate the doctrine's effect on innocent purchasers, the legislature dictated that purchasers are not bound by a pending lawsuit unless they have constructive notice of it, which requires that a *lis pendens* notice be filed in the recorder's office. *Id*. (citing 735 ILCS 5/2-1901 (West 1992)). A *lis pendens* is not an injunction, however, as it does not formally restrain purchase or conveyance. *E&E Hauling, Inc. v. DuPage County*, 77 Ill. App. 3d 1017, 1025 (1979).

¶ 22    Pertinent to this appeal, in *Nemanich v. Long Grove Country Club Estates, Inc.*, 119 Ill. App. 2d 169, 173 (1970), the reviewing court held that the filing of a *lis pendens* notice and the impairment of the party's credit constituted an ordinary injury resulting in similar causes of action, not special injury. East Washington nonetheless urges us to find that special injury occurred from the *lis pendens* here, supporting its claim for malicious prosecution. East Washington relies on the harsh realities accompanying the filing of a *lis pendens*. See *E&E Hauling, Inc.*, 77 Ill. App. 3d at 1025 (stating that filing a *lis pendens* often involves a harsh result); *Chappelle v. Gross*, 26 A.D. 2d 340 (N.Y. App. Div. 1966) (recognizing that "the use of *lis pendens* which interferes with one's power to sell the land against which the *lis pendens* is filed, when used maliciously and without probable cause, is actionable" and "[i]t would be extraordinary indeed if *** a proceeding created for a wise purpose and for good ends could be used by a suitor with malice aforethought, without incurring any personal responsibility"). Indeed, in *E&E Hauling, Inc.*, the court stated, "the filing of a notice of a pending suit often has the same practical effect as an injunction without providing a defendant with the protections built into injunction statutes." 77 Ill. App. 3d at 1025.

¶ 23     Assuming without deciding that a *lis pendens* can result in special damages sufficient to support a subsequent claim for malicious prosecution, we nonetheless find that East Washington's allegations did not establish special damages sufficient to survive a section 2-615 motion here.

¶ 24     East Washington, in a conclusory fashion, alleged that the *lis pendens* prevented it "from being able to sell the property to a different buyer well past December 9, 2015." East Washington did not allege, however, that it had an interested buyer that was put off by the *lis pendens*. Instead, East Washington alleged that it kept Fornelli Tower off the market, a decision belonging solely to East Washington. *Cf. Bank of Lyons v. Schultz*, 78 Ill. 2d 235, 238, 240-41 (1980) (finding special damages existed where preliminary injunctions prevented the plaintiff from using insurance proceeds for more than nine years, during which she was unable to make mortgage payments and lost her house); see also *Equity Associates, Inc. v. Village of Northbrook*, 171 Ill. App. 3d 115, 118-199 (1998) (finding, where the defendants had sought but did not obtain an injunction against a building permit, that the plaintiff's allegations of potentially lost lender commitments and damage to reputation as real estate developers, were inadequate to satisfy the special injury requirement).

¶ 25     The complaint's measure of damages is telling: "Lynd, through ADP, had agreed in the Purchase Agreement that the $3.5 million in escrow sums plus the $1 million nonrefundable extension fee would compensate 55 East Washington for harm caused to it by having Fornelli Tower kept off the market through December 9 and in the event that Lynd never caused ADP to complete the sale and timely pay the full purchase price." Thus, East Washington's damages were, or could have been, dealt with through contract, through its litigation against ADP for breach thereof or through its request for sanctions under Rule 137. These were ordinary

damages. While East Washington seeks to hold Lynd personally liable, rather than ADP, the party to the contract, this does not convert ordinary damages into something more, regardless of Lynd's despicable conduct.

¶ 26     Here, the circuit court properly dismissed East Washington's malicious prosecution claim due to its failure to allege special damages. Accordingly, we need not consider the parties' other contentions.

¶ 27     For the foregoing reasons, we affirm the circuit court's judgment.

¶ 28     Affirmed.