**Cory D. CHAN, Plaintiff–Appellant, Cross–Appellee,**

v.

**Edward S. WODNICKI, individually and in his former capacity as Deputy Superintendent of the Chicago Police Department, Defendant–Appellee, Cross–Appellant.**

Nos. 96–1683, 96–1784.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1997.

Decided Aug. 29, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 29, 1997.*

* Judge Joel M. Flaum took no part in consideration of this petition for rehearing en banc.

Ruth E. VanDemark (argued), Ralph N. Glader, Susan Bogart, Latasha R. Thomas, Chicago, IL, for Plaintiff–Appellant.

Lawrence Rosenthal, Benna R. Solomon, Timothy W. Joranko (argued), Susan S. Sher, Office of the Corporation Counsel, Chicago, IL, for Defendant–Appellant.

Barbara L. Herwig, Peter P. Maier (argued), Department of Justice, Civil Division, Appellant Section, Washington, DC, for Amicus Curiae.

Before CUMMINGS, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Following a trial, the jury returned a verdict in favor of the plaintiff, Officer Cory D. Chan, for $21,000 in compensatory damages, $10,000 for pain and suffering, and $121,000 in punitive damages. Both parties filed post-trial motions, and the district court granted the defendant Deputy Superintendent Wodnicki's motion for judgment as a matter of law. Officer Chan now appeals, and Deputy Superintendent Wodnicki conditionally cross-appeals. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

Mr. Chan is a police officer with the Chicago Police Department. The defendant, Deputy Superintendent Wodnicki, was the Deputy Superintendent for the Intelligence Division in which Officer Chan served. In that division, Officer Chan was assigned from 1985 to 1989 to a multi-jurisdictional unit, the Chicago Terrorist Task Force ("CTTF"). In that unit, members of the Chicago Police Department served with other state and federal officers. The CTTF required that its members, including Chan, have a "top secret" security clearance from the federal government. As a member of the CTTF, Officer Chan worked well over forty hours a week and received added compensation for the extra hours. He also had use of an official vehicle for police business.

In 1989, Officer Chan received a subpoena commanding his appearance before a grand

jury. Officer Chan assumed that the grand jury was investigating illegal activity in the Chinatown section of the City. He previously had been assigned there. After speaking to an attorney provided by his union, Officer Chan invoked his fifth amendment privilege against self-incrimination. He alleges that the questions he was asked during the grand jury proceedings were not specific·questions related to his official duties as a police officer. He also testified at trial that he was not advised that any answers provided would not be used against him in a criminal context. After his grand jury appearance, he reported to his superiors that he had invoked his fifth amendment privilege before the grand jury. When he returned to the station, his superiors called him in, and he again told them that he did not answer the grand jury's questions. After this meeting, one of the supervisors told him that he could lose his security clearance.

Shortly thereafter, Deputy Superintendent Wodnicki transferred Officer Chan to another division. In that division, the officer was assigned to duty that required that he wear a uniform. After this transfer, Officer Chan's security clearance was revoked.[1] His rank and salary, however, remained the same. Deputy Superintendent Wodnicki testified that he had removed Officer Chan from the CTTF for the following reasons: He did not know why Officer Chan had asserted his fifth amendment privilege and did not know the subject of the grand jury investigation; he considered Officer Chan a security risk; he was told that the FBI was going to revoke the clearance, and the FBI no longer wanted Officer Chan on the CTTF. Officer Chan was replaced on the CTTF by someone who had been in Deputy Superintendent Wodnicki's chain of command before he became Deputy Superintendent.

The union filed a grievance over the transfer on Officer Chan's behalf. On August 20, 1990, an arbitrator ordered Chan's reinstatement in the Intelligence Section, but determined that he was without jurisdiction to order Chan's reinstatement to the CTTF. In April 1991, Officer Chan was renominated to the CTTF and applied for his security clearance. By the time of the trial, his clearance had not been approved. In this § 1983 action, he claims that he was transferred in retaliation for asserting his constitutional right against self-incrimination. In his complaint, Officer Chan alleged that the transfer caused economic and reputational harm. Economically, he had fewer opportunities for overtime with the plain-clothes unit. Reputationally, he alleged harm because he had to wear a uniform, his car was taken away, and his new assignment was less prestigious.

### B. Proceedings in the District Court

Prior to trial, the district court dismissed from the action several defendants named in the complaint. The Chicago Police Department was dismissed because it was not a suable entity. The § 1983 claim against the City was dismissed because Officer Chan had not alleged that this transfer was the direct result of any policy. Officer Chan sought to amend his complaint, but the magistrate judge denied that request and stated that the amended complaint did not cure this problem. Officer Chan never requested that this ruling be reviewed by the district court.[2] Deputy Superintendent Wodnicki's motion for summary judgment on the ground of qualified immunity was denied by the district court. At that time, the district court was of the view that there was a genuine issue of material fact as to whether the transfer constituted such a substantial penalty upon Officer Chan that it violated his right against self-incrimination, guaranteed by the Fifth Amendment as made applicable to the states through the Fourteenth Amendment.

At trial, the jury returned a verdict for Officer Chan. It awarded him $21,000 for economic loss and $10,000 for pain and suffering. It also awarded $121,000 in punitive damages.

The district court then granted Deputy Superintendent Wodnicki's motion for judgment as a matter of law. It held that he was

---

1. There was testimony indicating that his security clearance was revoked because he was no longer on the CTTF.

2. Officer Chan's failure to bring this matter to the attention of the district court constitutes waiver of the issue. See Fed.R.Civ.P. 72(a); cf. Swaback v. American Info. Techs. Corp., 103 F.3d 535, 544 n. 26 (7th Cir.1996).

entitled to qualified immunity because, at the time of Officer Chan's transfer, it was not clearly established that the transfer constituted a burden sufficiently grave to constitute an infringement on the officer's Fifth Amendment rights. The court reasoned that it was not clearly established at the time of the transfer that Deputy Superintendent Wodnicki would have known that $21,000 was a sufficient penalty to infringe on the officer's rights. *See* R.244 at 6–7.

## II

### DISCUSSION

■ Government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The official is entitled to this immunity if, at the time he acted, he reasonably could have determined that his actions did not violate clearly established law. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Because of the "expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office ... [and] the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials," *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736(internal quotation, citations and brackets omitted), qualified immunity bars suits for damages against "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "The inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996) (citing *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038), *cert. denied*, —— U.S. ——, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997).

■ In *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991),

the Supreme Court of the United States noted that, in evaluating a claim of qualified immunity, a court is essentially presented with two questions: (1) whether the plaintiff has asserted a violation of the constitutional right at all; and (2) whether the defendant's actions were objectively reasonable in light of then-prevailing standards. *See Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994). A negative answer to either of these questions requires a determination that the officer is immune from a suit for damages.

■ Courts have often found their task easier by approaching immediately the second question; we shall follow that methodology today. Under the well-established analysis, the plaintiff must establish [3] that, at the time that the defendant official acted, the law was so "clearly established" that "a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. To establish this criterion, the plaintiff must show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law. *See Erwin*, 92 F.3d at 525. In short, the act of the defendant must be assessed at a sufficiently specific level of generality to show that the conduct at issue is forbidden. *See Rakovich v. Wade*, 850 F.2d 1180, 1209–10 (7th Cir.1987) (en banc), *cert denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Qualified immunity ought to be available unless "the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir.1987).

■ We therefore turn to an examination of the law at the time that Deputy Superintendent Wodnicki acted. The basic principles that govern this area were stated succinctly by the Supreme Court in *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). In that case, the Court stated the watershed rule that the

---

**3.** *See Erwin*, 92 F.3d at 525 (holding that the plaintiff has the burden of establishing that the

law was clearly established).

"Fifth Amendment privilege against compelled self-incrimination protects grand jury witnesses from being forced to give testimony which may later be used to convict them in a criminal proceeding." *Id.* at 804–05, 97 S.Ct. at 2134–35. "[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution." *Id.* at 805, 97 S.Ct. at 2135. The Court went on to note that "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Id.*; *see also Minnesota v. Murphy,* 465 U.S. 420, 434, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984). In Cunningham, the Court also made it clear that governmental coercion can take many forms and that economic sanctions are just one form of pressure that may be brought to bear on an individual in an effort to force that person to give up the right against self-incrimination. The "touchstone of the Fifth Amendment is compulsion, and direct economic sanctions and imprisonment are not the only penalties capable of forcing the self-incrimination which the Amendment forbids." *Cunningham,* 431 U.S. at 806, 97 S.Ct. at 2135.[4]

■ Therefore, the government may not threaten the sort of action that may coerce an employee into forfeiting his right against self-incrimination. The Supreme Court has made clear that the threat of job loss for a public employee is a sufficient threat to require that the employee be granted immunity from prosecution before he is required to answer questions about his public responsibilities. *See Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *see also Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) (holding that disqualification of a contractor from public contracts for five years is a sufficiently serious threat to require immunity before testimony can be compelled); *Spevack v. Klein,* 385 U.S. 511, 516, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) (holding that the "threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege") (plurality opinion).

■ On the other hand, the jurisprudence of the Supreme Court and of this court also makes clear that not every consequence of invoking the Fifth Amendment is considered sufficiently severe to amount to coercion to waive the right. Rather, the effect must be sufficiently severe to be "capable of forcing the self-incrimination which the Amendment forbids." *Cunningham,* 431 U.S. at 806, 97 S.Ct. at 2135; *see Murphy,* 465 U.S. at 435, 104 S.Ct. at 1146 (holding that mere obligation to appear before a probation officer does not "give rise to a self-executing privilege," but that result "may be different" if the state conditioned probation on not invoking the Fifth Amendment privilege); *Baxter v. Palmigiano,* 425 U.S. 308, 316–20, 96 S.Ct. 1551, 1556–58, 47 L.Ed.2d 810 (1976) (holding that permitting the drawing of an adverse inference in a civil matter, here a prison disciplinary proceeding, did not amount to an impermissible burden on Fifth Amendment rights); *see also LaSalle Bank Lake View v. Seguban,* 54 F.3d 387 (7th Cir.1995) (holding that inference is permissible from non-movant party's invocation of Fifth Amendment right in reply to summary judgment motion, but only when that invocation is weighed with all other evidence); *Daniels v. Pipefitters' Ass'n Local Union,* 983 F.2d 800, 802 (7th Cir.1993) (discussing the permissible inference in civil litigation).

■ Deputy Superintendent Wodnicki transferred Officer Chan from the Task Force to patrolman duties. The officer lost no rank or pay. His only concrete detriment was the loss of two incidental benefits that went with the position on the task force, the opportunity to earn additional compensation through overtime assignments and the use of a government car. Even when one factors into the balance the loss of the prestige that

---

**4.** To the extent the district court's opinion can be read as holding that the Fifth Amendment is violated only by economic burdens, it does not state fully the law.

goes with such a special assignment, we cannot say that, at the time that Deputy Superintendent acted, it was clear that Officer Chan's invocation of the Fifth Amendment exacted the sort of deprivation that the case law said was forbidden. As the City of Chicago points out in its brief, shortly before Deputy Superintendent Wodnicki acted, the Court of Appeals for the Third Circuit had held that the lateral transfer of a police officer did not amount to the sort of penalty that could be considered coercive with respect to Fifth Amendment rights. *See Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia,* 859 F.2d 276, 282–83 (3d Cir. 1988). Indeed, the court noted specifically that it could find no case that had held that any action short of discharge or suspension constituted such a threat. Id. at 283 n. 10. Officer Chan, who has the burden on this issue, also has not been able to find such authority.

## Conclusion

Because the grant of judgment as a matter of law on the ground of qualified immunity was correct, we must affirm the judgment of the district court.

AFFIRMED