**Eugene SPARING, Plaintiff,**

v.

**VILLAGE OF OLYMPIA FIELDS, and Officer James Keith, Defendants.**

No. 97 C 5479.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 13, 1999.

892

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiff.

Thomas George DiCianni, Michael W. Tootooian, Jennifer Ann Pritz, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge.

Eugene Sparing ("Sparing") brought this suit alleging that James Keith ("Keith"), a police officer with the Village of Olympia Fields, violated Sparing's civil rights by entering his home and arresting him without a warrant and without probable cause. Sparing seeks damages under 42 U.S.C. § 1983 for the alleged civil rights violations, and also invokes the court's supplemental jurisdiction to assert the Illinois tort of malicious prosecution against Keith and the Village (where appropriate, "Defendants"). Defendants now move for summary judgment, while Sparing moves for summary judgment on his § 1983 claims. For the following reasons, the court grants Defendants' motion and denies Sparing's motion.

### I. BACKGROUND [1]

On July 23, 1996, David Smith ("Smith") filed a criminal report with the Olympia Fields Police Department. Smith, an accountant, told Keith that he terminated an employment relationship with Tom Sanfratello ("Sanfratello") on May 31, 1996. Smith complained that Sanfratello took files from Smith's office, prepared checks made out to himself, and forged Smith's signature on the checks. Smith said his friend, Sparing, saw Sanfratello in Smith's office on July 9, 1996 at 2:30 a.m. Sparing allegedly knocked on the window to get

---

1. The court takes the facts from the parties Local Rule 12 statements, and discusses any factual disputes in the text. On September 1, 1999, Local Rules 12(M) and 12(N) were renumbered to Local Rules 56.1(a) and 56.1(b). Consistent with the parties submissions, the court cites the former numbering system in this opinion.

Sanfratello's attention, but Sanfratello ignored him.

On August 13, 1996, Keith telephoned Sparing, asking him to verify Smith's version of events, and Sparing did so. Later the same day, Keith questioned Sanfratello about the alleged incident. Sanfratello disputed the story, claiming that he did not leave Smith's employment until June 10, 1996. Sanfratello admitted taking files, but claimed that he returned them to Smith. Sanfratello also admitted signing checks, but maintained he was a signatory on the account, and Smith owed him money.

Sanfratello also told Keith about a conversation he had with Sparing's secretary, Linda Parker ("Parker"). Parker allegedly told Sanfratello that Smith and Sparing were "up to no good." (Defs.' Rule 12(M) stmt. ¶ 6.)[2] According to Sanfratello, Parker said that Smith faxed a message to Sparing about Sparing's alleged observation of Sanfratello at Smith's office. Sanfratello gave Keith a copy of the fax, which read:

> Gene:
>
> July 9, 1996 at 2:45 a.m. [you] observed Tom at office copying files from computer and photocopying. You knocked on windows and Tom ignored you. You left and went home.
>
> Thanks,
> David

(Defs.' Rule 12(M) stmt. ¶ 7.)

On August 14, 1996, Keith telephoned Parker to investigate Sanfratello's story, and prepared a written report of this telephone interview. According to Keith's report, Parker told Keith that she received the fax from Smith and gave it to Sparing, who allegedly said "Dave [Smith] wants me to perjure myself." (Defs.' Rule 12(M) stmt. ¶ 9.)

The next day, Parker telephoned Keith to tell him that Sparing confronted her about the conversation she had with Keith the previous day. According to Parker, she met Sparing for lunch, where he asked her with whom she had been speaking. Parker did not answer Sparing's question, but later Sparing drove her by the Olympia Fields police station to "refresh her memory." Parker then told Sparing that she spoke with the police about the fax from Smith. According to Parker, Sparing responded "I thought you were my friend," and asked "How could you do this to me?" and "Don't you know this could lead to criminal charges against me?" (Defs.' Rule 12(M) stmt. ¶ 10.) Parker claimed that Sparing then fired her, told her that he would be evicting her from the house she rented from him, and that he was taking back a van on which she was making payments. Later the same day, Keith interviewed Parker in person, where she restated the things she told Keith in their telephone conversation.

Following this meeting with Parker, Keith went to Sparing's residence/business and knocked on the door. A man answered the door, and identified himself as Sparing. Keith then told Sparing he was under arrest. At the time Keith announced the arrest, Keith was standing outside the threshold, and Sparing was standing inside the screen door. Then, Sparing asked if Keith had a warrant. Keith replied that he did not need one because he had probable cause to believe Sparing committed a crime. After Keith announced the arrest, Sparing asked to put something down, and walked farther into his residence. At that time, Keith stepped inside Sparing's residence. Sparing returned to the doorway, and walked outside with Keith, who then handcuffed Sparing and took him to the Olympia Fields police station. Sparing was charged with obstructing a peace officer in violation of 720 ILCS 5/31–1.

---

**2.** Sparing objects to this statement, and other statements, as hearsay. (*See* Pl.'s Rule 12(N) reply, ¶¶ 6, 9, 10.) As discussed below, the court does not consider the statements for their truth. (*See infra,* Part II.B.2.) Rather, the court considers the statements to review the information known to Keith at the time of Sparing's arrest. Therefore, Sparing's objections are overruled.

According to Sparing, Keith offered to release Sparing if he would provide evidence against Smith. Sparing claims that during the ride to the police station, Keith said "You're going to have to change your story. You're going to have to cooperate. And if you testify against Smith, then I won't arrest you." (Pl.'s Rule 12(N) stmt. ¶ 6.) Sparing also claims Keith said that if Sparing "told the right story" and testified against Smith, "this will be over for you." (Pl.'s Rule 12(N) stmt. ¶ 7.) Keith denies making these statements.

At the time of his arrest, Sparing claims he was selected to be a director of a business that was in the process of going public. As a member of the board of directors, Sparing would have been entitled to purchase 100,000 shares of stock at $0.075 per share. The stock, which is not yet publicly traded, sold for $2.00 per share during the summer of 1999. Sparing asserts that he lost this opportunity because Keith arrested him. Defendants disagree and argue that Sparing was not officially approved as a director at the time of his arrest.

On August 7, 1997, Sparing filed a four count complaint against Keith, the Village, and William Bednar.[3] Count I, brought under 42 U.S.C. § 1983, claims that Keith violated Sparing's Fourth Amendment rights when he entered Sparing's residence without a warrant. Count II, another § 1983 claim, alleges that Keith violated Sparing's Fourth Amendment rights when he arrested Sparing without probable cause. Count IV is brought under the court's supplemental jurisdiction, and alleges the Illinois tort of malicious prosecution against Keith and the Village on the theory of *respondeat superior*. A large part of Sparing's claimed damages is the purported lost investment opportunity.

In their motion for summary judgment, Keith and the Village argue that Keith has qualified immunity against the § 1983 claims because Keith did not arrest Sparing in his home, and because Keith had probable cause to make the arrest. Keith and the Village also argue that the malicious prosecution claim fails because Keith had probable cause, and because of the Illinois Tort Immunity Act, 745 ILCS §§ 10/2–109 and 10/2–208. Alternatively, Keith and the Village argue that Sparing's claimed damages are speculative, and not recoverable.

In Sparing's motion on the § 1983 claims, he argues that Keith did not have probable cause to make the arrest, and that he is entitled to judgment because Keith admits to entering Sparing's home. Sparing does not move for summary judgment on his malicious prosecution claim, rather, he asserts that a trial is necessary. Sparing also maintains that the alleged damages are not speculative, and should be resolved at trial.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educational Services, Inc.*, 176 F.3d 934, 936 (7th Cir.1999). In other words, summary judgment is the "put up or shut up" stage of a lawsuit, when the party opposing the motion must present "what evidence it has that would convince a trier of fact to accept its version of events." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir.1999) (*citing Schacht v. Wisconsin Dep't of Corrections*, 175 F.3d 497, 503–04 (7th Cir.1999)). In deciding a motion for summary judgment, the court can only consider evidence that would be admissible

---

**3.** William Bednar is a police officer in Park Forest, Illinois. Count III was directed to Officer Bednar, which Sparing voluntarily dismissed on February 3, 1998.

at trial under the Federal Rules of Evidence. *See, Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. *See* Fed. R.Civ.P. 56(c), *see also, Perdomo v. Browner,* 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), *see also, First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 922 (7th Cir.1996). The choice between reasonable inferences from facts is a jury function. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Qualified immunity

### 1. In general

 Government officials have qualified immunity against § 1983 liability "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Wollin v. Gondert,* 192 F.3d 616, 622 (7th Cir. 1999) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The rationale behind the qualified immunity doctrine is to protect public officers from "undue interference with their duties and from potentially disabling threats of liability . . . ." *Wollin,* 192 F.3d 616, 622 (*citing Jenkins v. Keating,* 147 F.3d 577, 584–85 (7th Cir.1998)). The immunity operates to avoid "excessive disruption" of government, and permits "the resolution of many insubstantial claims on summary judgment." *See Wollin,* 192 F.3d 616, 622 (*quoting Harlow,* 457 U.S. at 818, 102 S.Ct. 2727 (1982)). The existence of qualified immunity is a question for the court, which should resolve the issue as early as possible. *See Biddle v. Martin,* 992 F.2d 673, 676 (7th Cir.1993) (noting that a false arrest case should not go to

trial if there is any reasonable basis to find probable cause) (*citing Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) and *Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir. 1992)); *see also Alvarado v. Picur,* 859 F.2d 448, 451 (7th Cir.1988) (holding that the question of qualified immunity is a question of law for the court).

 Qualified immunity is a two part analysis. First, the court considers whether the plaintiff has produced evidence of a violation of a federal constitutional right. *See Spiegel v. Cortese,* 196 F.3d 717, 722 (7th Cir.1999) (*citing Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995)). If so, the court considers whether the constitutional standards implicated were clearly established at the time in question. *See Spiegel,* 196 F.3d 717, 722. The defendant is entitled to qualified immunity if the answer to either inquiry is negative. *See Chan v. Wodnicki,* 123 F.3d 1005, 1008 (7th Cir.1997) (noting the plaintiff's burden to establish that, under clearly established law, the defendant official would understand that his actions violate the plaintiff's rights). Although qualified immunity is a defense, the plaintiff has the burden of establishing that the defendant violated a clearly established constitutional right. *See Spiegel,* 196 F.3d 717, 722.

### 2. Probable cause

The court first addresses Sparing's claim that he was arrested without probable cause, and Keith's assertion that he is entitled to qualified immunity against that claim. After reviewing the parties briefs, Local Rule 12 statements, and supporting materials, the court finds the first qualified immunity question dispositive. *See Khuans v. School Dist. 110,* 123 F.3d 1010, 1018 (7th Cir.1997) (finding qualified immunity applied after reviewing the first step in the qualified immunity analysis); *compare Chan,* 123 F.3d at 1008 (noting that most courts go directly to second inquiry). As described below, Keith is entitled to qualified immunity because Sparing presents no evidence that Keith did not have probable cause.

■ The constitutional right at issue is Sparing's right to be free from arrest without probable cause. "It is axiomatic that '[a] warrantless arrest ... must be supported by probable cause.'" *United States v. Sholola,* 124 F.3d 803, 814 (7th Cir.1997) (*quoting United States v. Navarro,* 90 F.3d 1245, 1254 (7th Cir.1996)). The court's determination of probable cause is an objective test, focusing on the information known to officers at the time of arrest. *See Spiegel,* 196 F.3d 717, 723 n. 1 (noting that a probable cause determination is less than a "more likely than not" test, but how much less will depend on the circumstances) (*citing Gramenos v. Jewel Companies,* 797 F.2d 432, 438 (7th Cir.1986)). Probable cause itself is a " 'commonsense determination, measured under a reasonableness standard,' ... and is present if, at the time of arrest, 'the facts and circumstances within the arresting officer's knowledge' " would warrant a reasonable person to believe that a crime had been committed. *See Spiegel,* 196 F.3d 717, 723, (*quoting Tangwall v. Stuckey,* 135 F.3d 510, 519 (7th Cir.1998) and *Qian v. Kautz* 168 F.3d 949, 953 (7th Cir.1999)). In other words, "the inquiry is whether an officer has reasonable grounds on which to act[.]" *Spiegel,* 196 F.3d 717, 723 (*quoting Kelley v. Myler,* 149 F.3d 641, 647 (7th Cir.1998)). With these principles in mind, the court examines the information known to Keith at the time he arrested Sparing.

■ The tale begins with Smith's report to Keith, where Smith complained that Sanfratello took files from Smith's office and forged Smith's name on checks. Smith's story led Keith to question Sparing and Sanfratello. Sanfratello, in turn, led Keith to Parker, who provided ample evidence for a reasonably prudent person to believe that Sparing had committed a crime. First, Parker told Keith that she received the fax from Smith and gave it to Sparing, who allegedly said "Dave [Smith] wants me to perjure myself." (Defs.' Rule 12(M) stmt. ¶ 9.) The fax itself appears to be instructions from Smith to Sparing about Sparing's alleged sighting of Sanfratello in Smith's office. Second, Parker told Keith that Sparing confronted her about her conversations with Keith, and drove her past the Olympia Fields police station, saying "I thought you were my friend," and asking "How could you do this to me?" and "Don't you know this could lead to criminal charges against me?" (Defs.' Rule 12(M) stmt. ¶ 10.) Finally, Parker told Keith that Sparing fired her, told her he was going to evict her, and that he was taking back a van on which she had been making payments. Again, it is irrelevant whether Parker's statements were correct, or whether Sparing actually made the statements that Parker related to Keith. *See Spiegel,* 196 F.3d 717, 723; *cf Wollin,* 192 F.3d 616, 621 (noting that a court reviewing an officer's determination of probable cause should not ask, after the fact, if there was a more reasonable interpretation of events) (*citing Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir.1998)). Rather, the question is whether Keith had reasonable grounds on which to act. *See Spiegel,* 196 F.3d 717, 723. On these facts, the court finds that Keith had reasonable grounds to believe that Sparing fabricated the story about Sanfratello, and that Sparing and Smith conspired to frame Sanfratello. Therefore, the court answers the first qualified immunity question in the negative, and finds, as a matter of law, that Keith had probable cause to arrest Sparing.

Despite the deferential rules of probable cause, Sparing argues the intricacies of law, and contends that Keith did not have probable cause to arrest Sparing for obstructing a police officer, 720 ILCS § 5/31–1, the crime with which Sparing was charged.[4] Sparing relies on *People v.*

---

4. The statute reads, in relevant part:
　　720 ILCS 5/31–1. Resisting or obstructing a peace officer or correctional institution employee.

(a) A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act

*Raby,* 40 Ill.2d 392, 240 N.E.2d 595 (1968) to argue that obstructing a peace officer requires a physical obstruction, rather than merely providing false information to an officer. Because Sparing did not physically obstruct Keith, Sparing argues that Keith could not have had probable cause to arrest Sparing for obstructing a police officer. Sparing further argues that Keith did not have probable cause to arrest Sparing for disorderly conduct. According to Sparing, the Illinois disorderly conduct statute, 720 ILCS § 5/26–1, only applies to persons that *file* a false police report.[5] Because Sparing did not file a formal police report, he argues that Keith could not have probable cause to arrest Sparing for disorderly conduct.

Keith submits that he had probable cause to arrest Sparing for obstructing a police officer, and also maintains that he had probable cause to arrest Sparing for disorderly conduct, which Keith claims is closely related to obstructing a police officer. According to Keith, a § 1983 claim based on false arrest will fail if probable cause exists for a crime that is closely related to the crime charged. *See Biddle,* 992 F.2d at 676–77 (and cases cited therein).

The court agrees with Sparing that physical obstruction is a necessary element of the crime of obstructing a peace officer. *See People v. Hilgenberg,* 223 Ill.App.3d 286, 165 Ill.Dec. 784, 585 N.E.2d 180, 183 (1991). Nonetheless, the court finds Keith's argument persuasive. "Probable cause need not exist[ ] for the charge for which plaintiff was arrested, so long as probable cause existed for arrest on a closely related charge." *Biddle,* 992 F.2d at 676. The court is to "strike a balance which allows the arresting officer to choose

which crime she will charge without having to charge every single offense sustainable on the facts, and yet does not 'open [ ] the door to the extrapolation of offenses in an effort to justify a sham arrest.' " *Id.* (*quoting Trejo v. Perez,* 693 F.2d 482, 485 (5th Cir.1982)). Indeed, the court does "not consider all the possible charges [Sparing's] conduct might support." *Biddle,* 992 F.2d at 677; *see also Spiegel,* 196 F.3d 717, 723 n. 1 (stating that the court could not "emphasize enough" that an officer does not need probable cause as to every element of an offense, rather, the officer needs enough information to believe that the "arrestee was committing, or had committed a crime") (*citing Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). The court finds that Sparing's conduct, as known to Keith at the time of the arrest, is sufficiently related to disorderly conduct to support his arrest. *See People v. Stevens,* 40 Ill. App.3d 303, 352 N.E.2d 352, 354 (1976) (upholding a conviction for disorderly conduct where the defendant told police a false story of a robbery); *see also Biddle,* 992 F.2d at 676–77 (citing cases). Further, Sparing presents no evidence to suggest that Keith extrapolated the obstructing charge from non-existent facts in order to justify a sham arrest. *See Biddle,* 992 F.2d at 676; *cf Richardson v. Bonds,* 860 F.2d 1427, 1431 n. 3 (7th Cir.1988) (noting that an arrest could be found invalid if an arrestee could demonstrate, with specific facts, that an arresting officer acted in bad faith). Thus, Sparing's dissatisfaction with being charged with obstructing a police officer is unavailing. Sparing's other argument, that he could not be charged with disorderly conduct because he did not file a formal police report, is equally unavail-

---

within his official capacity commits a Class A misdemeanor.

**5.** The statute reads, in relevant part:
720 ILCS 5/26–1. Disorderly conduct.
(a) A person commits disorderly conduct when he knowingly:
(4) Transmits or causes to be transmitted in any manner to any peace officer, public

officer or public employee a report to the effect that an offense will be committed, is being committed, or has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense will be committed, is being committed, or has been committed....

ing. *See Stevens,* 352 N.E.2d at 354 (upholding a disorderly conduct conviction where the defendant gave a false story to police).

■ The court's inquiry into Keith's qualified immunity stops at this point. *See Chan,* 123 F.3d at 1008 (noting that qualified immunity exists if the answer to either inquiry is negative); *cf Khuans,* 123 F.3d at 1018. However, even if the court were to continue to the second qualified immunity question, Keith would still prevail. If a § 1983 plaintiff establishes a constitutional violation, the defendant is entitled to qualified immunity, unless the plaintiff also demonstrates that the law "was so 'clearly established' that 'a reasonable official would understand that what he is doing violates that right.'" *Chan,* 123 F.3d at 1008 (*quoting Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). To make this demonstration, Sparing must point to either an analogous case, dealing with the same constitutional right and similar facts, or demonstrate that the violation was so obvious that a reasonable person would recognize that their actions were a violation. *See Chan* 123 F.3d at 1008; *see also Spiegel,* 196 F.3d 717, 723 (noting that a police officer is immune to claims based on an arrest without probable cause unless it is obvious that no reasonably competent officer would have believed that there was probable cause) (*citing Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Sparing fails to carry this burden. Sparing does not point to an analogous case that shows that Keith did not have probable cause. Further, as demonstrated by the above discussion, Keith's actions were not obviously violative of Sparing's rights. Put another way, Sparing fails to point to any law indicating that Keith's actions were illegal. Consequently, the answer to the second qualified immunity question is also a negative.

### 3. Sparing's arrest and Keith's entry

Sparing next contends that he was arrested in his home, without a warrant, and without exigent circumstances, in violation of his Fourth Amendment rights. Keith claims that he is entitled to qualified immunity because he did not arrest Sparing in his home. The court's resolution of this issue is limited to the first qualified immunity inquiry, which the court answers in the negative.

■ The constitutional right at issue is the right to be free from a warrantless arrest in the home, in the absence of exigent circumstances. Again, it is axiomatic that the Fourth Amendment prohibits a warrantless entry into a home to effect an arrest, in the absence of exigent circumstances. *See Payton v. New York,* 445 U.S. 573 579–80, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, as discussed below, the court finds that Sparing's allegation is without merit.

■ The case of *United States v. Berkowitz,* 927 F.2d 1376 (7th Cir.1991) decides the issue. *Berkowitz* arose from the warrantless arrest of Marvin Berkowitz at his home, and the subsequent seizure of evidence found inside the home. *See id.* at 1385–90. One of the issues on appeal was whether the trial court erred in denying Berkowitz's motion to suppress the evidence seized during Berkowitz's arrest. *See id.* at 1378. The parties agreed that there was probable cause to arrest Berkowitz, and that the arresting officers went to Berkowitz's home, knocked on the door, and Berkowitz answered the door. *See id.* at 1379–80. At that point, the stories diverged. According to the government, the arresting officer told Berkowitz he was under arrest immediately after Berkowitz opened the door. *See id.* at 1380. The officer claimed that Berkowitz did not resist or attempt to close the door. *See id.* Instead, Berkowitz merely asked if he could have his sports coat, which was draped over a chair inside the home, and another officer retrieved the coat. *See id.* Berkowitz disagreed, and said that after he opened his door, the officers stepped into the home, and announced the arrest. *See id.* Thus, according to the government, the arrest preceded the entry, while

according to Berkowitz, the entry preceded the arrest. *See id.* On these disputed facts, the Seventh Circuit remanded the case for an evidentiary hearing on whether the officers were *inside or outside Berkowitz's home at the time the officer announced the arrest. See id.* at 1385–90 (emphasis added).

The significance of *Berkowitz* is that the Seventh Circuit stated that the arrest was valid if it happened as the government claimed. *See id.* Courts generally uphold arrests where the police go to a home without a warrant, knock on the door, *announce the arrest from the outside of the home, and the person acquiesces to the arrest. See id.* at 1386 (and cases cited therein) (emphasis added). "*Payton* prohibits only a warrantless entry into the home, not a policeman's use of his voice to convey a message of arrest from outside the home .... Moreover, there is nothing in *Payton* that prohibits a person from surrendering to police at his doorway." *Berkowitz,* · 927 F.2d at 1386 (citations omitted). When a person submits to an arrest at his doorway, the arrestee "has forfeited the privacy of his home to a certain extent." *Id.* at 1387. In other words, "[a] person who has submitted to the police's authority and stands waiting for the police to take him away can hardly complain when the police enter his home briefly to complete the arrest." *Id.* On such facts, officers may enter the home after announcing the arrest to take control of the arrestee without violating the Fourth Amendment. *See id.*

The facts of the case at bar are indistinguishable from the government's position in *Berkowitz.* The parties do not dispute that Keith knocked on Sparing's door, Sparing answered and identified himself, and Keith told Sparing he was under arrest. At the time Keith announced the arrest, Keith was standing outside the home, and Sparing was standing inside the home behind a screen door. After Keith announced the arrest, Sparing asked if Keith had a warrant, and Keith said he did not. Then, Sparing asked if he could put something down, and walked farther into

his residence. At that time, Keith entered the home. Sparing does not argue that he did not submit to Keith's announcement of arrest, and there is no evidence to support such an argument. *Cf California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that a person submitting to a show of authority is under arrest). This case presents the "threshold arrest" scenario that the Seventh Circuit said does not violate the Fourth Amendment. *See Berkowitz,* 927 F.2d at 1385–90. Therefore, the court finds that Sparing has not presented evidence of a constitutional violation. *See id.; see also McKinney v. George,* 726 F.2d 1183, 1188 (7th Cir.1984) (noting that the privacy of the home is not invaded when a person surrenders to an arrest made at the threshold); *Cf Collier v. Baker,* No. 96–C–0023, 1999 WL 543206, at *3–5 (N.D.Ill. July 23, 1999) (discussing *Berkowitz* in the context of a warrantless arrest in a suspect's home, and denying a motion for summary judgment to resolve a factual question about whether police officers had consent to enter the suspect's home).

Sparing claims that this case is controlled by *Payton,* which prohibits warrantless entries into a home to make a routine arrest, absent exigent circumstances. *See Payton* 445 U.S. at 589–90, 100 S.Ct. 1371. *Payton,* however, is readily distinguishable from the case at bar. In *Payton,* New York detectives, after two days of intensive investigation, found enough evidence to establish probable cause to believe that Thomas Payton committed a murder. *See id.* at 576, 100 S.Ct. 1371. Without a warrant, six officers went to Payton's apartment to arrest him. *See id.* The officers knocked on the door, but did not get a response, even though they could see light and hear music coming from the apartment. *See id.* The officers called for assistance, and half an hour later, used crowbars to break open Payton's door. *See id.* at 576–77. As it turned out, no one was home, but the officers saw a .30 caliber shell casing in plain view, seized it,

and the government introduced it at Payton's murder trial. *See id.* On such facts, the Supreme Court held that police officers must have a warrant to enter a home to effect a routine arrest, unless exigent circumstances exist. *See id.* at 596–600, 100 S.Ct. 1371.

In sharp contrast to the facts of *Payton,* the undisputed facts in this case establish that Keith did not break into Sparing's home to effect the arrest, and that Keith's entry into Sparing's home does not violate the Fourth Amendment. *See Berkowitz,* 927 F.2d at 1385–90. Thus, Sparing's reliance on *Payton* is unavailing. The other cases Sparing cites, *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), and *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), are similarly distinguishable. *Welsh* dealt with a warrantless entry into the home of a drunken driving suspect, and his arrest in his second floor bedroom. *See Welsh,* 466 U.S. at 743, 104 S.Ct. 2091. *Rodriguez* considered a warrantless entry into a home, which was based on the consent of a person that did not have common authority over the premises. *See Rodriguez,* 497 U.S. at 179, 110 S.Ct. 2793. Both of these cases are inapposite to the case at bar, where Keith announced the arrest from outside the home, and Sparing acquiesced to the arrest in his doorway.

In sum, the court finds that Keith did not violate Sparing's Fourth Amendment right to be free from a warrantless arrest in his home. Thus, the court answers the first qualified immunity question in the negative, and Keith is entitled to qualified immunity. *See Chan v. Wodnicki,* 123 F.3d 1005, 1008 (7th Cir.1997). Although the court does not reach the second qualified immunity question, the court notes that the *Payton* rule is well established, and that if the facts of this case had been within the scope of *Payton,* the result might well be different.

## C. Malicious prosecution

■ Sparing's next claim is that both Keith and the Village are liable to him for the Illinois tort of malicious prosecution.

Under Illinois law, a plaintiff must allege the following elements to state a cause of action for malicious prosecution: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Meerbrey v. Marshall Field & Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1231 (1990) (citations omitted); *see also Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996).

■ Keith and the Village make two arguments for summary judgment. First, they argue that they are entitled to summary judgment because the existence of probable cause is an absolute bar to a claim of malicious prosecution. *See Biddle,* 992 F.2d at 678. Second, Keith and the Village argue that the Illinois Tort Immunity Act immunizes public officers from liability, unless the officers acted wilfully and wantonly.

Sparing disagrees, maintaining that Keith did not have probable cause, and that a jury must decide whether Keith acted wilfully and wantonly. As evidence of Keith's allegedly wilful and wanton conduct, Sparing contends that: (1) Keith did not fully investigate Sanfratello's alleged crime of forging his name on Smith's checks; (2) Keith did not seek legal advice prior to arresting Sparing; (3) Keith did not obtain an arrest warrant; and (4) Keith tried to force Sparing to testify against Smith. As outlined below, the court need not address whether Keith's conduct was wilful and wanton.

The court's earlier finding of probable cause necessarily dooms Sparing's malicious prosecution claim. Illinois has a "strict requirement that a malicious prosecution plaintiff show ... that the action complained of ... was commenced maliciously and without probable cause." *Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill.2d 267, 226 Ill.Dec. 604, 685 N.E.2d 1347, 1357 (1997) (noting that

Illinois law disfavors an action for malicious prosecution); *see also Juriss v. McGowan,* 957 F.2d 345, 349 n. 1 (7th Cir.1992) ("[A] person arrested with probable cause cannot cry false arrest"). In this case, Sparing is unable to succeed on his malicious prosecution claim because the court has already found that Keith had probable cause to arrest Sparing. Thus, an essential element of the claim fails, and Keith and the Village are entitled to summary judgment.

The court also notes that Sparing utterly fails to present evidence to support his prima facie case of malicious prosecution. As stated earlier, summary judgment is the "put up or shut up" stage of a lawsuit, where the party opposing the motion must present evidence that could convince a trier of fact of the merits of the claim. *See Shank,* 192 F.3d at 682 (*citing Schacht,* 175 F.3d at 503–04). Sparing presents no evidence that the criminal charges against Sparing were resolved in his favor, or that Keith acted with malice. The court is not obliged to "scour the record" to find Sparing's evidence, and declines to do so in this case. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994). Further, as discussed below, Sparing's claimed damages are not recoverable. Therefore, the court has an additional basis on which to grant summary judgment in favor of Keith and the Village on Sparing's claim of malicious prosecution.

### D. Damages

Although the issue is now moot, the court agrees with Keith and the Village that Sparing's lost investment damages are not recoverable. A § 1983 case is a tort claim, and the damages available are governed by general principles of tort law. *See Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 305–06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *see also Button v. Harden,* 814 F.2d 382, 383 (7th Cir.1987). A tort plaintiff does not recover all damages that arise from "but for" causation. *See Movitz v. First Nat'l Bank of Chicago,* 148 F.3d 760, 762–65 (7th Cir.1998). The plaintiff is only entitled to recover those

damages that are foreseeable. *See id.* (and cases cited therein). Here, Sparing's claimed damages are anything but foreseeable. According to Sparing, his arrest prevented him from being named to the board of directors of a corporation that was in the process of being formed, and which the corporate promoters planned to take public. As a director, Sparing would have had the opportunity to purchase 100,000 shares of stock at $0.075 per share. The parties dispute whether Sparing was actually chosen to be on the board of directors of the new corporation, or was merely being considered as a director. In any event, Sparing was not a director at the time of his arrest, and never purchased any stock. Further, the court is unaware of whether the stock was available for purchase at the time of Sparing's arrest, or if the new corporation had even been incorporated when Sparing was arrested. Finally, the stock is not yet being publicly traded. Nonetheless, Sparing claims that he is entitled to the difference between the stock's current value and the price at which he would have purchased the stock, $0.075 per share. Put another way, Sparing wants Keith and the Village to pay him for an investment he did not make. In addition to the patently speculative nature of the damages, Sparing fails to present any evidence to suggest that Keith and the Village had reason to foresee the claimed damages. Sparing's argument is similar to that of an angry teenager, who tells his parents that he did not choose to be born, and is just as unavailing. *See Movitz,* 148 F.3d at 762–65 (and cases cited therein).

### III. CONCLUSION

The court finds that Keith has qualified immunity against Sparing's claims brought under 42 U.S.C. § 1983. The court also finds that Sparing's malicious prosecution claim is barred by the existence of probable cause for Keith to arrest Sparing. Further, the court finds that Sparing fails to present evidence of essential elements of his malicious prosecution claim. For the foregoing reasons, the court grants Defendants' motion for summary judg-

ment, and denies Plaintiff's motion for partial summary judgment. Case terminated.

IT IS SO ORDERED.